UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSICA RAMIREZ,

Petitioner,

v.

JEFF SESSIONS, et al.,

Respondent.

Case No. 18-cv-05188-SVK

**ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Re: Dkt. No. 1

Petitioner Jessica Ramirez is an alien detained by Immigration and Customs Enforcement (“ICE”) at the Mesa Verde detention center in Bakersfield, California pending removal proceedings. Before the Court is Petitioner’s petition for a writ of habeas corpus ordering Petitioner’s release from detention by ICE within 30 days unless Respondents schedule a bond hearing before an immigration judge. ECF 1 (the “Petition”). Petitioner argues that under 28 U.S.C. § 2241, she is entitled to a writ on two grounds: (1) the Government’s categorical denial of bail to Petitioner violates the Eighth Amendment to the United States Constitution, and (2) Petitioner’s ongoing detention without an individualized bond hearing concerning Petitioner’s flight risk or danger to the community violates the Due Process Clause of the Fifth Amendment. *Id.* The Government opposes the Petition, arguing that Petitioner has neither a statutory nor constitutional right to a bond hearing. ECF 10. The parties have consented to the jurisdiction of a magistrate judge. ECF 8, 13. The Court deems this matter suitable for determination without oral argument. Civ. L.R. 7-1(b).

For the reasons discussed below, the Court follows courts in this district and elsewhere in finding that the Due Process Clause of the Fifth Amendment requires, at some point in time, an individualized bond hearing for an arriving alien, such as Petitioner, who is detained pursuant to

8 U.S.C. § 1225(b)(1)(B)(ii). However, on the record before the Court, Petitioner's petition for a writ is **DENIED WITHOUT PREJUDICE.**

## I. FACTUAL BACKGROUND

Because Petitioner did not file a traverse, the allegations in the Government's return brief "shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248. The Government submitted evidence to support the following:

Petitioner is a citizen of El Salvador who arrived at the San Ysidro port of entry into the United States on or about November 18, 2017. ECF 10-2 at ¶ 3 and Ex. A (ECF 10-3)). She is pursuing asylum, withholding of removal, and withholding under the Convention Against Torture. ECF 1 at ¶ 13. Petitioner passed a credible fear interview. ECF 10-2 at ¶ 4 and Ex. B (ECF 10-4). On or about December 29, 2017, Petitioner was placed into removal proceedings as an alien who, at the time of application for admission, was not in possession of a valid entry document. *Id.* Petitioner is presently detained by ICE at the Mesa Verde detention center in Bakersfield, California. *Id.* As of the date of this order, Petitioner has been in ICE detention for more than 14 months.

On March 28, 2018, ICE declined to parole Petitioner because she "ha[d] not established to ICE's satisfaction that [she] is not a flight risk," for reasons including her failure to demonstrate to ICE's satisfaction a valid U.S. address where she would reside, ties to the community, or that imposition of a bond or other conditions would ensure her appearance at required immigration hearings. ECF 10-5.

According to Respondents, Petitioner first appeared before an immigration judge within two months of her arrival in the United States, when she appeared for a master calendar hearing and requested additional time to seek representation. ECF 10-1 at ¶ 3. On January 30, 2018, Petitioner again appeared before the immigration judge at a master calendar hearing and requested additional time to prepare and file an application for relief. *Id.* at ¶ 4. On February 13, 2018, Petitioner appeared with counsel at a master calendar hearing and requested an additional continuance to prepare. *Id.* at ¶ 5. On March 6, 2018, Petitioner appeared with counsel at a master calendar hearing and filed her application for relief. *Id.* at ¶ 6. An individual hearing on

Petitioner's application was held on April 25, 2018. *Id.* at ¶ 7. At the conclusion of that hearing, the immigration judge denied Petitioner's application and ordered her removed. *Id.*; ECF 10-2 at ¶ 6 and Ex. D (ECF 10-6).

Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA") on May 21, 2018. ECF 10-1 at ¶ 8; ECF 10-2 at ¶ 7 and Ex. E (ECF 10-7). On October 5, 2018, the BIA affirmed the decision of the immigration judge. ECF 10-1 at ¶ 8; ECF 10-2 at ¶ 8 at Ex. F (ECF 10-8). On October 29, 2018, Petitioner appealed the BIA's decision to the Ninth Circuit and requested a stay of her removal during that proceeding. *See Ramirez Escobar v. Whitaker*, 9th Cir. Case No. 18-72923. By operation of the Ninth Circuit's General Order, a temporary stay is in effect while the Ninth Circuit considers Petitioner's request for a stay of removal. *See* Ninth Circuit General Order 6.4(c).

## II. LEGAL STANDARD

### A. Legal framework for immigration detention

United States immigration law authorizes the detention of noncitizens awaiting removal from the country, with different statutory provisions governing different phases of detention. The Government is authorized "to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, —— U.S. —, 138 S. Ct. 830, 838 (2018). Different statutory provisions authorize detention following an order of removal. *See* 8 U.S.C. § 1231(a).

According to the Government, Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). ECF 10-2 at ¶ 3. That statute provides that "[i]f the [asylum] officer determines at the time of the interview that an alien has a credible fear of prosecution…the alien shall be detained for further consideration of the application for asylum."

### B. Jurisdiction

Several statutory provisions limit the jurisdiction of federal courts to review immigration proceedings. *See, e.g.*, 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States …



United States District Court
Northern District of California

United States District Court
Northern District of California

shall be available only in judicial review of a final order under this action"); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole"). However, these provisions do not deprive the federal courts of jurisdiction to challenge the extent of the Government's detention authority. *Jennings*, 138 S. Ct. at 841. "[A] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [ ] bond hearing determinations for constitutional claims and legal error," and "claims that the [Attorney General's] discretionary process itself was constitutionally flawed are cognizable in federal court on habeas..." *Singh v. Holder*, 638 F.3d 1196, 1200-02 (9th Cir. 2011) (internal citation and quotation marks omitted). Respondents admit that "[f]ederal district courts may grant writs of habeas corpus if the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States." ECF 10 at 1 (quoting 28 U.S.C. § 2241(c)(3)). Accordingly, this Court has jurisdiction over Petitioner's habeas petition, which challenges the constitutionality of her detention.

### C. Proper Forum

Petitioner filed her habeas petition under 28 U.S.C. § 2241. ECF 1. "The general rule [is] that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). The petition states that Petitioner is detained by ICE at the Mesa Verde detention center in Bakersfield, California. ECF 1 at ¶¶ 1, 5. Bakersfield is not within this judicial district; it is instead in the Eastern District of California. The Court must therefore consider whether Petitioner has filed her habeas petition in the proper forum.[1]

---

[1] The majority in *Padilla* referred to the question of proper forum in terms of where "jurisdiction lies," stating that "jurisdiction over Padilla's habeas petition lies in the Southern District [of New York] only if it has jurisdiction over" Padilla's immediate custodian. *Padilla*, 542 U.S. at 442. The dissenting justices instead viewed the question as "one of venue," stating that "[i]t bears emphasis that the question of the proper forum to determine the legality of Padilla's incarceration is not one of federal subject-matter jurisdiction" because "[f]ederal courts undoubtedly have the authority to issue writs of habeas corpus to custodians who can be reached by service of process 'within their respective jurisdictions.'" *Id.* at 463 (Stevens, J., dissenting) (citing 28 U.S.C.

To answer this question, the Court must more carefully examine the underpinnings of *Padilla*'s general rule requiring a habeas petitioner to file in the district of confinement. The rule articulated in *Padilla* stemmed from the "immediate custodian rule," which requires the habeas petitioner to name as the respondent the person who "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Id.* at 435 (emphasis in original).

The petitioner in *Padilla* was a United States citizen who filed a habeas petition challenging his detention as an "enemy combatant." 542 U.S. at 430. In that case, the Supreme Court expressly declined to rule on who the proper respondent is to a habeas petition filed by an alien detained pending deportation. *Id.* at 435 n.8. "In so doing, the Supreme Court declined to resolve the split among the lower courts regarding whether the immediate custodian rule applies in the immigration detention context." *Carmona v. Aitken*, No. 14-cv-05321-JSC, 2015 WL 1737839, at *3 (N.D. Cal. Apr. 10, 2015). One court in this district has concluded that "the immediate custodian rule does not apply" in an immigration case and that both the Attorney General and Secretary of the Department of Homeland Security were proper respondents. *Id.* at *5. Another court in this district has held that an immigration habeas petition could properly name as a respondent the "one district [ICE] director" who "has full authority to direct the local warden to release petitioner." *Zabadi v. Chertoff*, No. C 05-01796 WHA, 2005 WL 1514122, at *3 (N.D. Cal. June 17, 2005). If in the immigration context there are proper respondents other than the person in immediate custody of a petitioner, then it follows that there may be districts other than the district of detention that are proper fora for a habeas petition challenging that detention.

In addition, some courts have recognized special considerations in immigration detention cases that may warrant allowing a person in immigration detention to bring a habeas petition in a district other that where the petitioner is detained. As recognized by a court in another district (in a case that pre-dated *Padilla*), "[t]o limit a petitioner to bringing an action in the judicial district in which he or she is (or was) detained would allow the Attorney General and INS virtually

---

§ 2241).

unfettered authority over the jurisdiction in which habeas petitions must be brought" which in turn "can have a substantial adverse impact on a petitioner's rights." *So v. Reno*, 251 F. Supp. 2d 1112, 1130-31 (E.D.N.Y. 2003).

The Court concludes that under the particular facts of this case, this district is a proper forum for Petitioner's habeas petition, for several reasons. First, Petitioner named three Respondents: the Attorney General, the DHS Secretary, and David Jennings, whom Petitioner identifies as "the San Francisco Field Office Director for ICE" who "is authorized to release Petitioners [sic] and has legal custody of the Petitioner." ECF 1 at ¶ 12. The Government has not challenged this characterization of Mr. Jennings' role. San Francisco is in this district. As such, even under the "immediate custodian rule," this district is a proper forum for the petition. Under *Carmona*, the inclusion of the Attorney General and DHS Secretary is proper and may also make this district a proper forum. Finally, Respondents have not asserted that venue is improper in this district and therefore have waived that argument. *Padilla*, 542 U.S. at 452 (Kennedy, J. concurring); *see generally Smith v. Idaho*, 383 F.3d 934, 938 (9th Cir. 2004) (as amended by 392 F.3d 350 (9th Cir. 2004)).

**III. DISCUSSION**

The Government devotes a portion of its response to the petition to arguing that Petitioner does not have a statutory right to a bond hearing because of the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See* ECF 10 at 5. That is correct. Petitioner, however, does not argue that she is statutorily entitled to a bond hearing. Instead, Petitioner argues that her detention without a bond hearing violates her rights under the Fifth and Eighth Amendments to the United States Constitution. ECF 1. The Supreme Court in *Jennings* expressly left open constitutional questions when remanding that case to the Ninth Circuit. *Jennings*, 138 S. Ct. at 851. The Ninth Circuit, in turn, remanded the case to the district court for consideration of the constitutional questions in the first instance. *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). As a result, following *Jennings*, neither the Supreme Court or Ninth Circuit has issued a decision on the constitutional implications of detaining immigrants without a bail hearing.

United States District Court
Northern District of California

Against this backdrop, the Court now addresses Petitioners constitutional arguments.

**A. Eighth Amendment**

Petitioner first argues that her detention violates the Eighth Amendment's prohibition against cruel and unusual punishment. ECF 1 at 10. The Court rejects this argument. The removal process is a civil proceeding, not a criminal punishment. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002). As such, the Eighth Amendment does not entitle Petitioner to habeas relief. *See Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29, 2018); *Calmo v. Sessions*, No. C 17-07124 WHA, 2018 WL 2938628, at *5 (N.D. Cal. June 12, 2018).

**B. Fifth Amendment**

Petitioner next argues that her detention violates the Due Process Clause of the Fifth Amendment, which guarantees that "[n]o person shall be … deprived of life, liberty, or property without due process of law." ECF 1 at 11. An alien is a "person," and the Fifth Amendment's protections extend to "all persons within the territory of the United States." *Jennings*, 138 S. Ct. at 861, 862 (Breyer, J., dissenting) (citing *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896)). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1997). However, the nature and degree of the due process protections available to aliens in removal proceedings "may vary depending upon status and circumstance." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Government argues that because Petitioner is an arriving alien seeking initial admission—as opposed to an alien found in the United States who is placed in removal proceedings—she enjoys no due process rights beyond the procedures afforded by statute. *See* ECF 10 at 6-7 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 and *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc)). In light of the Supreme Court's holding in *Jennings* that periodic bond hearings are not statutorily required under Section 1225(b), the implication of the Government's argument is that an asylum applicant detained after presenting herself at the border and passing a credible fear interview has no due process right to a bond hearing regardless of how long she is detained. This argument is based on the "entry

fiction," *i.e.*, a legal concept that treats "excludable aliens" who are detained at the border upon their initial entry to the country as if they have not entered the country, even if physically present in the country. *See Mezei*, 345 U.S. at 212.

To the extent the Government's "entry fiction" argument is directed to Petitioner's request for immediate release, the Court need not consider the argument because it concludes for other reasons that Petitioner is not entitled to immediate release. Specifically, the Court has no basis to evaluate the factors that would be considered at a bond hearing—namely, whether she is a danger to the community and whether she is a flight risk—and therefore Petitioner is not entitled to immediate release from ICE custody.

The Government also argues that the "entry fiction" deprives Petitioner of a constitutional due process right to a bond hearing, relying primarily on *Mezei* and *Barrera-Echavarria*. As discussed above, in *Jennings*, the Supreme Court remanded to the Ninth Circuit to decide the constitutional issues raised by detention without a bond hearing, and the Ninth Circuit, in turn, remanded the issue to district court. *Jennings*, 138 S. Ct. at 851; *Marin*, 909 F.3d at 255. Although the Ninth Circuit has not yet ruled on the issue of whether aliens detained under Section 1225(b) have due process rights following the Supreme Court's remand in *Jennings*, in its own order remanding the case to district court the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the Government's arbitrary deprivation of liberty would have thought so." *Marin*, 909 F.3d at 256.[2]

*Mezei* and *Barrera-Echavarria* do not preclude a finding that arriving aliens detained under Section 1225(b)(1)(B)(ii) have a due process right to be free of unreasonable detention. *Mezei* and *Barrera-Echavarria* both concerned persons categorized as "excludable aliens." But

[2] The dissenting justices in *Jennings* also criticized the "entry fiction." "[T]he Government suggests that those [Fifth Amendment] protections do not apply to asylum seekers or other arriving aliens because the law treats arriving aliens as if they had never entered the United States; hence they are not held within its territory. This last-mentioned statement is, of course, false. All of these noncitizens are held within the territory of the United States at an immigration detention facility. . . But once we admit to uttering a legal fiction, we highlight, we do not answer, the relevant question: *Why* should we engage in this legal fiction here? The legal answer to this question is clear. We cannot here engage in this legal fiction." *Jennings*, 138 S. Ct. at 862 (Breyer, J., dissenting).

since the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), immigration law "is no longer denominated in terms of 'entry' and 'exclusion'" because "IIRIRA replaced these terms with the broader concept of 'admission.'" *Xi v. United States Imm. and Nat. Svc.*, 298 F.3d 832, 838 (9th Cir. 2002). The Ninth Circuit has stated that "IIRIRA introduced an entire set of new legal concepts purporting to redefine the 'basic territorial distinction' at play in immigration law" and "[w]e simply cannot ignore that 'excludable' is no longer a term that has any statutory import under the INA." *Id.* Accordingly, the statutory scheme underpinning the decisions in *Mezei* and *Barrera-Echavarria* is no longer in effect.

This case is distinguishable from *Mezei* for other reasons as well. Unlike Petitioner in this case, who is an asylum-seeker who passed a credible fear interview and thus has colorable grounds for seeking admission to the United States, the petitioner in *Mezei* had been permanently excluded from the United States and did not question the validity of the exclusion order. 345 U.S. at 207. *Mezei*, a post-World War II case concerning an immigrant who had spent extended time behind the Iron Curtain, is also distinguishable from this case because it was expressly premised on "danger to the national security [which] presents different considerations" than the more routine facts of this case. *Id.* at 216.

A number of district courts that have considered the issue have concluded that arriving aliens have at least a limited right to due process and that at some point detention without a bail hearing becomes unreasonably prolonged in violation of that right. In *Singh v. Nielsen*, a court in this district evaluated the due process right of an arriving alien held under Section 1225(b) to a bond hearing. No. 18-cv-02490-LB, 2018 WL 4110549, *3-*4 (N.D. Cal. Aug. 29, 2018). Although the court concluded that the petitioner in that case was not entitled to a bond hearing under the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)—for reasons including the fact that he had already been given one bond hearing—by engaging in this analysis the court confirmed that arriving aliens have at least some due process rights.

Likewise, since the Supreme Court's decision in *Jennings*, courts in other districts have held that arriving aliens detained under Section 1225(b) have due process rights and that at some point, detention without a bond hearing becomes unreasonable. *See, e.g.*, *Paiz v. Decker*, No. 18-

CV-4759 (GHW) (BCM), 2018 WL 6928794, at *11 (S.D.N.Y. Dec. 27, 2018) (recommending that petition of habeas corpus be granted, holding that detention of alien under Section 1225(b) for more than 16 months had become unreasonable) and cases cited therein; *Pierre v. Doll*, No. 3:17-cv-1507, 2018 WL 5315203, at *4 (M.D. Pa. Oct. 26, 2018) (granting petition of habeas corpus where arriving alien had been held without a bond hearing for more than two years).

This Court heeds the Ninth Circuit's articulation of "grave doubts" about the constitutionality of "any statute that allows for arbitrary prolonged detention without any process" (*Marin*, 909 F.3d at 256) and joins the other courts that have found that arriving aliens detained pursuant to Section 1225(b)(1)(B)(ii) have a due process right to an individual bond hearing once it is determined that the duration of their detention has become unreasonable.

Having concluded that Petitioner enjoys at least a limited right to due process, the Court must consider whether those rights entitle her to a bond hearing at this time. In *Jennings*, the Supreme Court reversed the Ninth Circuit's holding that noncitizens detained under 8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled by statute to bond hearings every six months. 138 S. Ct. at 837, 839. Just as there is no statutory six-month detention limit under Section 1225, the Court declines to articulate a bright-line rule concerning the length of detention that would violate an immigrant detainee's due process rights. The Court notes, however, that in the context of an immigrant detained under Section 1226, a court in this district has "presume[d] that an individual's prolonged detention of 27 months without a bond hearing would violate the Due Process Clause." *Calmo*, 2018 WL 2938628, at *3.

Because the Ninth Circuit has not yet ruled on the constitutional issues, the Court looks to post-*Jennings* cases in this district for guidance in determining when detention has become unreasonably long, in violation of a detainee's due process rights. In two of those cases, the courts applied the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), which considers: (1) the private interest affected, (2) the Government's interest, and (3) the value added by additional procedural safeguards to what has already been provided in the situation before the court. *Singh v. Nielsen*, 2018 WL 4110549, at *3 (arriving alien detained under section 1225); *Soto v. Sessions*, No. 18-cv-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30,

2018) (alien detained pursuant to section 1226(a)). In *Singh*, the court concluded that a detention of an arriving alien for more than 14 months under section 1225 did not violate his right to due process. The court noted that the petitioner's detention was not indefinite because his case was on appeal. *Singh v. Nielsen*, 2018 WL 4110549, at *3. The court also gave weight to the fact that the petitioner in that case had "received a bond hearing before an [immigration judge] with numerous procedural protections, had a right to appeal the adverse determinations to the BIA, and did not do so." *Id.* Similarly, in *Soto*, the court concluded that an eight-month detention under section 1226(a) did not violate the petitioner's due process rights, finding that her detention was not indefinite because she was "still working through the appropriate process" and there was movement in her case; the Government had an interest in assuring that the petitioner would not flee and in protecting the public from claimed danger posed by the petitioner; and the petitioner had already had a bond hearing. *Soto*, 2018 WL 3619727, at *3-4.

In another post-*Jennings* case in this district, the court considered (1) whether the petitioner's detention is finite; (2) whether the Government or immigration judge has acted in bad faith, delayed, or misled the petitioner; (3) whether any of the delay in immigration proceedings was the result of the petitioner's requests for continuances. *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2018 WL 4849684, at *5 (N.D. Cal. Oct. 4, 2018). There, the court concluded that a nearly 10-month detention under section 1226(c) was not unconstitutionally prolonged. *Id.*

After considering the facts of this case, the Court concludes that the continued detention of Petitioner without a bond hearing has not deprived her of due process as of the date of this order, although such detention may at a later time run afoul of Petitioner's rights. The relevant factors articulated in the cases discussed above weigh against a finding that Petitioner's detention to date has been unreasonably long. Petitioner has been detained since on or about November 18, 2017. At the time she filed her petition on August 23, 2018, Petitioner had been detained for approximately nine months; nevertheless, the Court analyzes the due process question as of the date of this order, at which time she has been detained for over 14 months.

Petitioner's detention, although not insignificant, does not yet appear to be indefinite. During Petitioner's detention she obtained consideration of the merits of her application for

admission. As outlined above, Petitioner first appeared at a master calendar hearing within two months of her detention. At her first three master calendar appearances, Petitioner requested and received continuances to seek counsel and prepare and file an application for relief. Petitioner's requests for continuances resulted in a modest delay of approximately two months in consideration of the merits of Petitioner's application. Ultimately, Petitioner filed her application and received an individual hearing at which the immigration judge denied the application. Petitioner appealed that decision to the BIA, which affirmed the immigration judge. Petitioner then appealed the BIA's decision to the Ninth Circuit, where her appeal remains pending. There is no evidence of delay or other misconduct by the Government in connection with these immigration proceedings. As in *Soto* and *Singh*, Petitioner's immigration case, now on appeal, appears to be moving forward on a typical schedule.

The Government has an interest in ensuring that Petitioner will not flee and will appear if ultimately ordered removed. *Soto*, 2018 WL 3619727, at *4. Although Petitioner's petition fails to mention it, the Government has presented evidence that ICE considered Petitioner for parole but on March 28, 2018 declined to parole her because she "ha[d] not established to ICE's satisfaction that [she] is not a flight risk," for reasons including her failure to demonstrate to ICE's satisfaction a valid U.S. address where she would reside, ties to the community, or that imposition of a bond or other conditions would ensure her appearance at required immigration hearings. ECF 10-5.

Although ICE's consideration of parole is not equivalent to a bond hearing before an immigration judge, the Court nevertheless gives some weight to the fact that ICE considered the same factors that would be considered in a bond hearing and concluded that Petitioner was not eligible for parole. Petitioner was entitled to seek redetermination of ICE's decision denying her parole, but there is no evidence in the record that she did so.

In sum, the facts of this case show that Petitioner's immigration case is proceeding in the usual manner, and Plaintiff has received a variety of procedural safeguards along the way. The Court concludes that under the facts of this case, Petitioner's detention to date has not been unreasonable and she is not entitled to a bond hearing at this time.

////

**IV. CONCLUSION**

For the reasons discussed in this order, Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED WITHOUT PREJUDICE** to Petitioner's ability to file another petition challenging her detention at a later date.

**SO ORDERED.**

Dated: January 30, 2019

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California